IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FLOYD FUENTES,

       Plaintiff,                  No. 2:12-cv-00573 JFM (PC)

    vs.

T. YOUNG, et al.,

       Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

**I. Introduction**

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983.  This case is proceeding on plaintiff's first amended complaint against defendants T. Young and T. Bartos.  ECF 7.  In his first amended complaint, plaintiff alleges that defendants assaulted him on February 18, 2010.  Id.  As a result, plaintiff contends that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.  Id.  Pending before the court is defendants' motion to dismiss these claims based on a failure to first exhaust administrative remedies.  ECF 30.  After careful review of the record, the undersigned concludes that defendants' motion to dismiss should be granted.

/////

/////

1

**II. Plaintiff's First Amended Complaint**

Plaintiff's claim arises from an incident that took place on February 18, 2010, during which plaintiff claims he was assaulted by defendants.  ECF 7 at 2.  In his complaint, plaintiff explains that he went to a clinic to obtain prescribed medication he was allegedly denied.  Id.  Plaintiff claims that while waiting outside the clinic gate he made a comment that agitated defendant Young causing him to order plaintiff to face a building wall.  Id.  Plaintiff alleges that while he complied with defendant Young's orders, defendant Young "approached plaintiff from behind," grabbed the back of his head and slammed his face into the wall causing his nose to bleed.  Id.  Plaintiff asserts that defendant Young continued to assault him by slamming his body into the ground.  Id.  Plaintiff further asserts that defendant Bartos then arrived and "started kicking plaintiff in the [head]" and face.  Id. at 3.  Plaintiff claims he "suffered [abrasions], bruise[s], [and] bleeding to [the] right eye and [n]ose."  Id.

**III. Motion to Dismiss - Failure to Exhaust**

In their motion to dismiss, defendants contend that plaintiff failed to exhaust his administrative remedies, did not sufficiently place prison officials on notice of the alleged excessive use of force, and did not timely file his administrative appeal.  ECF 30-1.  Plaintiff was informed of the requirements for opposing a motion to dismiss for failure to exhaust administrative remedies on February 15, 2013.  ECF 30.  Plaintiff filed an opposition (ECF 31), and defendants filed a reply (ECF 33).

**A.  Legal Standard Regarding Exhaustion**

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

2

confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money."  Id. at 734. The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).  The Supreme Court has cautioned courts against reading futility or other exceptions into the PLRA exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  Id., at 936-37.

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."

Id. at 90-91.  Thus, compliance with grievance procedures is required by the PLRA to properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.  When the rules of the prison or jail do not dictate the requisite level of detail for proper review, a prisoner's complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  This requirement is because the primary purpose of a prison's administrative review system is to "notify the prison of a problem and to facilitate its resolution."  Griffin, 557 F.3d at 1120.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies.  Id. at 1119-20.

## B. California Prisons' Grievance Procedures

California regulations allow a prisoner to appeal any action or decision by a prison official that adversely affects the prisoner's welfare.  Cal. Code Regs. tit. 15, § 3084.1(a).  To exhaust a grievance, an inmate must pursue his appeal through four levels, one "informal" and three "formal."  Id. §§ 3084.5, 3084.1(a).  An inmate must file the initial grievance within 15 working days of the action being appealed, and he must file each administrative appeal within 15 working days of receiving an adverse decision at a lower level.  Id. § 3084.6(c).

At the informal level, an inmate must seek to have the involved prison employee resolve the problem. Id. § 3084.5(a).  If this request is unsuccessful, the inmate must then fill out a "Form 602," the "Inmate/Parolee Appeal Form," describing the problem and action requested. Id. § 3084.2(a).  An "appeals coordinator" at the prison "screen[s]" each appeal before forwarding it on for review on the merits.  Id. § 3084.3(a).  The appeals coordinator may reject, or "screen," an appeal for various reasons, including failure to comply with the 15-day time limit,

1 | incompleteness or omission of necessary supporting documents, or failure to attempt to resolve

2 | the grievance informally.  Id. §§ 3084.3, 3084.6(c).  When the appeals coordinator rejects an

3 | appeal, he must fill out a form that explains why the appeal is unacceptable and instructs the

4 | inmate on what he must do to qualify the appeal for processing.  Id. § 3084.3(d).  If it appears

5 | from the appeal form that the prisoner has difficulty describing the problem in writing, the

6 | appeals coordinator must arrange an interview with the prisoner to help clarify or complete the

7 | appeal.  Id. § 3084.3(b)(3).  Once the appeals coordinator allows an appeal to go forward, the

8 | inmate must pursue it through three levels of formal review.  Id. § 3084.5.

9 | **C. Administrative Appeals**

10 | Plaintiff filed his first amended complaint on April 12, 2012, which the court has

11 | reviewed in connection with this motion.[1]  ECF 7.  At the time the underlying claims accrued,

12 | plaintiff was housed at High Desert State Prison ("HDSP").  Defendants provided the declaration

13 | of J.D. Lozano, Chief of the Office of Appeals for the California Department of Corrections and

14 | Rehabilitation ("CDCR").  Chief Lozano described the grievance procedure for inmates held in

15 | the CDCR, and submitted a copy of plaintiff's appeal history indicating there were "no exhausted

16 | Third Level appeals" filed by plaintiff.  ECF 30-2 at 5.  Defendants also provided the declaration

17 | of B. Da Veiga, Appeals Coordinator for Kern Valley State Prison ("KVSP"), who described the

18 | duties of an Appeals Coordinator, and provided a copy of plaintiff's KVSP appeal history.  ECF

19 | 30-3 at 4.  Finally, defendants submitted the declaration of L. Lopez, Appeals Coordinator for

20 | HDSP.  ECF 30-4.  L. Lopez described the duties of an Appeals Coordinator, and provided a

21 | copy of plaintiff's HDSP appeal history which included first and second level appeals based on

22 | plaintiff's allegations that nurses denied him "anti depression" and "medications" (appeal

23 | number HDSP-D-10-00443).  ECF 30-4 at 10.

24 |

25 | [1]  In both his original complaint and first amended complaint plaintiff refers to three exhibits.  Two exhibits are purportedly medical records, and the third exhibit contains declarations of inmate witnesses.  ECF 7 at 3-4.  However, these exhibits were not attached to

26 | plaintiff's complaints, nor does the court find any such exhibits in the record.

1      In appeal number HDSP-D-10-00443, received March 29, 2010, plaintiff sought

2  an investigation into his claims.  ECF 30-4 at 8.  Plaintiff alleged the following:

3          I'm filing this 602 against yard med staff for deliberate indifference
           due to mainly three nurses who between them have made it a point to
4          [deny] me of my anti depression & medications which help my body
           flush out mind altering poisons out of my system which can be fatal.
5          This has been going on now for some time now. . . . [Their]
           negligence to provide me of my medication caused me to lose touch
6          with reality which caused the 2/18/2010 problem with [defendant] c/o
           Young.
7
           . . . .
8
           Action Requested: I would like it to be known the [incident] that took
9          place with which I'm being [accused] of [assault] on staff be
           [acknowledged] (was not any of my fault) and in the future that they
10         do not play around with the [administration] of my medication for
           what ever reason and this to be placed in [their] files as misconduct.
11

12  Id. at 10 (emphasis omitted).

13      The first level appeal response summarized plaintiff's appeal as alleging "that due

14  to medical staff's failure to provide [him] with [his] medication as prescribed, [he] suffered from

15  a medical condition that altered [his] state of mind causing [him] to assault [defendant] Officer

16  T. Young."  ECF 30-4 at 12.  The first level appeal response also noted that during the interview

17  plaintiff stated, "Those nurses on "B" Yard are messing with me, and not giving me my

18  medication on purpose.  I need my meds, or I will go crazy, like I did the day [defendant] C/O

19  Young attacked me."  Id.  Plaintiff's first level appeal was denied based on a finding that staff did

20  not violate CDCR policy.  Id.

21      Plaintiff sought a second level review, stating he was dissatisfied with the first

22  level decision and explaining that

23         [r]egardless of [whether] or not the RN staff violated CDCR Policy,
           I was still not [provided] with Lactalose and Zoloft from 1-31-10 to
24         2-7-10 and that lack of medication for 8 days (actually it was far
           more) still led to many symptoms of Hepatic encephlopathy and my
25         getting charged & found guilty of assault on staff.

26  ECF 30-4 at 9.  The second level decision summarized plaintiff's appeal by articulating

                                              6

1   plaintiff's claims set forth in his initial appeal.  Id. at 16.  Plaintiff's second level appeal was also

2   denied based on a finding that staff did not violate CDCR policy.  Id.

3          As noted above, Chief Lozano's declaration indicates plaintiff did not file a third

4   level appeal.  ECF 30-2 at 5.

5          **D.  Analysis**

6          In their motion to dismiss, defendants set forth three arguments in support of

7   dismissing plaintiff's claim for failure to exhaust administrative remedies: (1) plaintiff did not

8   exhaust his appeal at the director's level of review; (2) plaintiff's first and second level appeals

9   did not put defendants on sufficient notice of the allegations of assault by defendants on February

10  18, 2010; and (3) plaintiff's appeal was untimely at the first level of appeal.  ECF 30-1 at 3.  The

11  court finds the first argument is dispositive, and therefore does not reach defendants' remaining

12  arguments regarding sufficient notice and the timeliness of plaintiff's first level appeal.

13         In his opposition plaintiff cites the Ninth Circuit case of Harvey v. Jordan, 605

14  F.3d 681 (9th Cir. 2010), in support of his argument that a partially granted 602 grievance

15  exhausts administrative remedies.  In their reply defendants correctly argue that Harvey is

16  misapplied to this case.  In Harvey, the plaintiff filed a grievance alleging "that he was denied

17  due process in connection with a disciplinary charge" and "[p]rison officials failed to hold a

18  hearing on the charge within the time allotted by prison rules."  Harvey, 605 F.3d at 683.

19  Plaintiff then "filed a grievance complaining about the delay and requesting access to [a]

20  videotape" which prison officials granted.  Id.  "The decision was labeled a partial grant of the

21  grievance because [the plaintiff] had stated that in the alternative he requested the charge be

22  dismissed."  Id.  Five months later, plaintiff complained that the hearing still had not taken place

23  and he had not been given the opportunity to view the videotape.  Id.  "The prison officials

24  construed that complaint as an appeal of their prior decision, and rejected it as untimely."  Id.

25  The Ninth Circuit explained that "[a]n inmate has no obligation to appeal from a grant of relief,

26  or a partial grant that *satisfies* him, in order to exhaust his administrative remedies."  Id.

7

1  (emphasis added).  The Ninth Circuit described plaintiff's subsequent complaint as a "reminder"

2  grievance that "cannot reasonably be construed as an appeal of the decision granting him a

3  hearing."  Id. at 685.

4            In the case at bar, plaintiff's partially granted grievances at the first and second

5  levels were merely to facilitate a review of his allegations.  ECF 30-4 at 12 and 17.  Ultimately,

6  plaintiff's grievances were denied at both levels with a finding that "[s]taff did not violate CDCR

7  policy."  Id.  This is unlike the plaintiff's partial grant in Harvey where the plaintiff was satisfied

8  because he was granted the relief he sought in the form of a hearing and access to view a

9  videotape.  Harvey, 605 F.3d at 683.  As a result of the denial of his grievances at both levels,

10  plaintiff still had an obligation to pursue a third level of appeal because he was dissatisfied with

11  the outcome of the first and second levels of appeal, and did not receive all the remedies that

12  were available at these intermediate levels of review.  Brown, 422 F.3d at 934-35.  Thus, the

13  court finds that plaintiff failed to exhaust his administrative remedies in accordance with the

14  PLRA.  42 U.S.C. § 1997e(a); see also Porter, 534 U.S. at 524 (exhaustion in prisoner cases

15  covered by § 1997e(a) is mandatory).

16  **IV.  Conclusion**

17            Accordingly IT IS HEREBY ORDERED that the Clerk of the Court randomly

18  assign a district judge to this action; and

19            IT IS HEREBY RECOMMENDED that:

20            1.  Defendants' motion to dismiss (ECF 30) be granted; and

21            2.  This case be dismissed without prejudice.

22  /////

23  /////

24  /////

25  /////

26  /////

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6  objections shall be filed and served within fourteen days after service of the objections.  The

7  parties are advised that failure to file objections within the specified time may waive the right to

8  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: May 13, 2013.

10

11                                    _____

12                                    ALLISON CLAIRE
                                      UNITED STATES MAGISTRATE JUDGE

13  fuen0573.mtd

14

15

16

17

18

19

20

21

22

23

24

25

26